```
___ FILED      ___ ENTERED
___ LODGED     ___ RECEIVED

        JUL 13 2015

           AT SEATTLE
    CLERK U.S. DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
  BY                         DEPUTY
```

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNETH BUNTING,<br><br>Defendant. | CASE NO. MJ15-313<br><br>COMPLAINT for VIOLATION<br><br>18 U.S.C. §§ 922(g)(1)<br>18 U.S.C. §§ 924(e) |

BEFORE United States Magistrate Judge John L. Weinberg, ~~Dean Brett,~~ Seattle, Washington.

The undersigned complainant being duly sworn states:

### COUNT 1

### Felon in Possession of a Firearm as an Armed Career Criminal

On or about June 20, 2014, in the City of Seattle, within the Western District of Washington, KENNETH BUNTING, having been convicted of the following crimes punishable by imprisonment for a term exceeding one year, to wit:

    a. *Assault in the Second Degree* (Case Number 99-1-00924-6), in King County Superior Court, Washington, on or about May 12, 2000.

    b. *Terroristic Threats* (Case Number 96CR1696), Dekalb County Superior Court, Georgia, on or about May 29, 1996.

   c. *Murder 1, Armed Robbery* (Case Number 77-549001), in Cook County Circuit Court, Illinois, on or about May 1, 1979.

   d. *Armed Robbery* (Case Number 72-325701), in Cook County Circuit Court, Illinois, on or about December 29, 1972.

did knowingly possess, in and affecting interstate and foreign commerce, the following firearm: a AMT, Model Backup, .380 caliber pistol, serial number C08630, which had been shipped and transported in interstate and foreign commerce.

  All in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e).

**The undersigned, Michael Jacobi, complainant being duly sworn states:**

## BACKGROUND AND QUALIFICATIONS

  2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

  3. I am a Special Agent with the United States Department of Justice (DOJ), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since February 1, 2010. I am currently assigned to the Seattle Field Division Headquarters, in Seattle, Washington where I am assigned to Group I. In this capacity, I conduct narcotics and firearm investigations, and enforce federal criminal laws relating to the possession and trafficking of firearms and narcotics by prohibited persons including those with extensive criminal histories. Prior to my employment with ATF, I was employed as a United States Border Patrol Agent in the Department of Homeland Security (DHS) in Tucson, Arizona.

  4. I received formal training in the Federal Law Enforcement Training Center in Glynco, Georgia, Criminal Investigators Training Program, which familiarized me with basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations. In addition, I successfully completed a fourteen week ATF Special

Agent Basic Training course in Glynco, Georgia, which included comprehensive, formalized instruction in, among other things: firearms identification, firearms trafficking, arson and explosives, and tobacco and alcohol diversion.

5. During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including those offenses involved in this current investigation. I have participated in more than forty (40) criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, and including Mexico-based drug trafficking organizations. These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the conducting of monetary transactions involving the proceeds of specified unlawful activities; and conspiracies associated with criminal narcotics offenses. These investigations have included use of the following investigative techniques: the use of confidential informants, undercover agents, the analysis of phone toll records, physical surveillances, and the execution of search warrants. I have planned, participated in, the execution of numerous search warrants authorizing the search of locations associated with drug traffickers and their co-conspirators, such as residences, businesses, storage facilities, outbuildings, safety deposit boxes, and vehicles. Additionally, I have participated in the execution of cell phone tracking warrants. I have testified in grand jury proceedings, and have written reports in the course of investigations. These investigations have resulted in numerous federal prosecutions of individuals who have possessed, imported, or distributed controlled substances, including cocaine, methamphetamine, as well as the seizure of those illegal drugs, the proceeds from the sale of those illegal drugs, and firearms.

6. This affidavit is made based upon my personal knowledge, training, experience and investigation, as well as upon information provided to me and my review of reports prepared by other law enforcement personnel. This affidavit is made for the purpose of establishing probable cause for this Complaint and thus does not include each and every fact known to me concerning this investigation.

7. Based upon my training and experience, I know that: pursuant to Title 21, United States Code, Section 841(a) it is unlawful for any person to knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or

Complaint: BUNTING - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

dispense, a controlled substance. Title 21 United States Code, Section 846, makes it illegal for anyone to conspire to commit such offenses. Pursuant to Title 18 United States Code, Section 924(c) it is unlawful for any person to possess of a firearm during a crime of violence or in furtherance of a drug trafficking crime. Title 18, United States Code, Section 922(g)(1) makes it illegal for any person who has been convicted, in any court, of a crime punishable by imprisonment for a term exceeding one year to possess in or affecting interstate commerce, any firearm or ammunition.

8. This affidavit is made in support of a complaint against KENNETH BUNTING for being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1).

### CONFIDENTIAL INFORMANT

9. As outlined below, a Confidential Informant, CI-8235, was utilized for controlled operations in this investigation. CI-8235 has no criminal convictions. I have paid the CI for his/her efforts in this investigation. The CI has assisted other law enforcement agencies and has also worked with me on other cases. To my knowledge, the CI has never given me false information, and the information he/she has provided to me has generally proved to be true, some examples of which are outlined herein.

### INVESTIGATION & PROBABLE CAUSE

10. On 16 June, 2014, following an operational briefing, agents met with and briefed CI-8235 at an undisclosed location. SA Roberts was then equipped with electronic surveillance device(s) to work in an undercover (UC) capacity. Agents then followed CI-8235 and SA Roberts to the 9400 block of Rainier Avenue South, Seattle, Washington.

11. Agents observed CI-8235 and SA Roberts walk to Rafeeq Sadeeq Hair Boutique, located at 9420 Rainer Avenue South, Seattle, Washington. SA Miller then observed CI-8235 and SA Roberts enter the Boutique where a brief conversation was heard via transmitter by surveillance units. SA Miller then observed CI-8235 and SA Roberts exit the Boutique and stand around in front of the Boutique on Rainier Avenue

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

South. Moments later SA Miller observed CI-8235 and SA Roberts speaking to a black male who surveillance units heard introduce himself as 'Fontaine' via transmitter. SA Miller also identified the WA registration of the green GMC Jimmy 'Fontaine' arrived in as AMF4585.

12. After CI-8235 and SA Roberts broke contact from 'Fontaine' they got back in their vehicle and traveled to an undisclosed debriefing location where they met Agents. Surveillance units then observed 'Fontaine' get into the identified GMC Jimmy and drive away. 'Fontaine' was later identified as Kenneth BUNTING. It was further discovered that BUNTING is a felon as a result of multiple convictions for violent crimes.

13. On 19 June, 2014, SA Roberts made a recorded phone call in an undercover capacity to BUNTING seeking to arrange a transaction in which BUNTING would trade a firearm to UC Roberts in return for cigarettes. BUNTING had expressed interest in such a transaction during their previous encounter.

14. 13. SA Roberts told BUNTING that he would be in the area of Rafeeq Sadeeq Hair Boutique, located at 9420 Rainier Avenue South, Seattle, Washington, the following day and would have the cigarettes if he, BUNTING, would be ready to make a transaction. BUNTING stated that he was at the Boutique seven days a week and that SA Roberts should just come by and talk to him because he, BUNTING, doesn't like to talk on the phone. SA Roberts acknowledged this but again tried to talk specifics of the transaction and again BUNTING told SA Roberts just to come by the following day and handle business in person not on the phone.

15. On or about June 20, 2014, SA Roberts, serving in an undercover capacity and outfitted with electronic surveillance device(s), arrived at Rafeeq Sadeeq Hair Boutique. Upon arrival, SA Roberts greeted BUNTING who was sitting in a chair in front of the business. BUNTING was speaking with an unidentified black male as SA Roberts approached on foot.

16. Shortly after BUNTING excused the unidentified male from the conversation, SA Roberts and BUNTING began to discuss cigarette prices. SA Roberts offered BUNTING ten (10) cartons of cigarettes in exchange for one (1) .380 caliber pistol. BUNTING quickly rebuffed SA Roberts proposal, and stated that he wanted fifteen (15) cartons of cigarettes in exchange for one (1) .380 caliber pistol. SA Roberts agreed to provide BUNTING with fifteen cartons of cigarettes.

17. Rafeeq Sadeeq, owner of the hair boutique, exited the business, and briefly spoke with BUNTING outside of SA Roberts' hearing distance. SA Roberts did observe Sadeeq inform BUNTING that he'd be leaving for "LA," and would return that evening or the following morning. After this statement, SA Roberts was unable to audibly observe their conversation.

18. After a brief conversation with Sadeeq, BUNTING returned to his chair next to SA Roberts. SA Roberts informed BUNTING that he (SA Roberts) would have to retrieve the cigarettes from the case located in the trunk of his vehicle. SA Roberts removed fifteen cartons of cigarettes from inside of a cardboard box in the trunk of his UC vehicle, and sat them next to BUNTING. BUNTING quickly inspected a carton of cigarettes, and then requested the unidentified black male to visually inspect the cartons.

19. SA Roberts and BUNTING then walked to SA Roberts' vehicle, with SA Roberts entering via the driver's side door, and BUNTING entering via the passenger side door. BUNTING removed an AMT, model Backup, .380 caliber pistol, bearing serial number C08630 from a location SA Roberts did not observe. BUNTING informed SA Roberts of the firearm's safety switch, and then handed the firearm directly to SA Roberts. SA Roberts then took physical possession of the firearm. BUNTING informed SA Roberts that the firearm was loaded, and a round of ammunition was in the chamber.

20. After a brief discussion between SA Roberts and BUNTING concerning a future firearm transaction, BUNTING exited the UC vehicle, and SA Roberts proceeded to leave the location.

21.     SA Miller met with SA Roberts at a predetermined location. SA Roberts handed over an AMT, Model Backup, .380 caliber pistol, serial number C08630, along with six (6) rounds of ammunition. SA Miller placed all items into the ATF evidence vault.

22.     SA Miller checked a computerized database to find out if the pistol was reported stolen. SA Miller found out the pistol was reported stolen by Kitsap County Sheriff's Office. SA Miller contacted the Kitsap County Sheriff's Office to confirm and requested a copy of the incident report. SA Miller was then faxed a copy of incident report #K14-000466, which involved a residential burglary on January 13, 2014. In that report the above obtained firearm was listed as being stolen.

23.     On July 17, 2014, following an operational briefing Agents met with and briefed CI-8235 at an undisclosed location. Agents briefed the CI and equipped him/her with electronic surveillance device(s) and ATF buy money. Agents then followed CI-8235 to the 9400 block of Rainier Avenue South, Seattle, Washington.

24.     Agents observed CI-8235 park and walk to Rafeeq Sadeeq Hair Boutique. TFO Sicilia then observed CI-8235 make contact with Kenneth BUNTING outside the Boutique. Surveillance units heard this conversation via transmitter. BUNTING explained that he had been at the hospital for a few days. BUNTING stated that he would be away for a couple days but plans to be back at the Boutique the end of the following week. TFO Sicilia then observed BUNTING and CI-8235 get into BUNTING's green GMC Jimmy, bearing WA registration AMF4585, where they continued their conversation for a few minutes. GS Bisbee then observed the Jimmy pull out and park across the street in front of the Tree House Collective, a marijuana dispensary, where BUNTING and the CI exited the vehicle. BUNTING entered the Tree House Collective and the CI went into the barber shop next door. Moments later GS Bisbee observed both parties return to the Jimmy and pull out and park across the street in front of the

1 | Boutique. TFO Sicilia observed BUNTING and the CI exit the Jimmy and continue to
2 | talk in front of the Boutique.

3 | 25. After CI-8235 broke contact from BUNTING, agents observed the CI
4 | return to his/her vehicle. The CI then traveled to an undisclosed debriefing location
5 | where he/she met Agents.

6 | 26. At the undisclosed debriefing location CI-8325 provided Agents with
7 | marijuana BUNTING had purchased for him/her in the Tree house Collective.

8 | 27. During a debrief CI-8325 stated the following, in sum and substance, to
9 | agents: BUNTING stated that he would have a shotgun or a rifle to sell for cash or trade
10 | for cigarettes late in the following week. He told the CI that handguns are harder to get.
11 | BUNTING told the CI that he can get the CI crack cocaine. The CI told BUNTING that
12 | he/she wanted an 8 ball when the firearm transaction occurs. The CI stated that he/she
13 | observed the butt of a small frame handgun coming out of BUNTING's front pocket
14 | when they were talking inside BUNTING's vehicle. The CI asked BUNTING if he
15 | would get the CI some marijuana from the Tree House Collective marijuana dispensary
16 | across the street as the CI keeps getting turned away because the CI doesn't have a
17 | medical marijuana card. BUNTING stated that he has a medical marijuana card but that
18 | he doesn't really need it because everyone knows him and he has connections. When
19 | BUNTING went into the dispensary the CI went into the barber shop next door. When
20 | BUNTING came out of the dispensary he handed the CI a baggie of marijuana.

21 | 28. After the CI left the Boutique surveillance units observed BUNTING get
22 | into the Jimmy and drive away.

23 | 29. The purchased marijuana was transported to ATF to be processed into
24 | evidence. The marijuana weighed 3.9 grams with packaging and field tested positive.

25 | 30. On 25 July, 2014, following an operational briefing, agents equipped UC
26 | Roberts with electronic surveillance device(s). Once surveillance units confirmed they

Complaint: BUNTING - 8

were in place Agents followed UC Roberts to the 9400 block of Rainier Avenue South, Seattle, Washington.

31. Agents observed UC Roberts park and walk to Rafeeq Sadeeq Hair Boutique, located at 9420 Rainier Avenue South, Seattle Washington. TFO Sicilia then observed UC Roberts make contact with Kenneth BUNTING outside the Boutique. Surveillance units heard this interaction via transmitter. Following several minutes of conversation, TFO Sicilia observed BUNTING and UC Roberts cross Rainier Avenue South to the west side of the street where they entered the Tree House Collective Marijuana dispensary. They were observed exiting the dispensary shortly after. Surveillance units then observed and heard BUNTING introducing UC Roberts to a black male, "Norm", who worked at the barber shop adjoined to the marijuana dispensary. TFO Sicilia then observed BUNTING and UC Roberts cross Rainier Avenue South back to the east side of the street and continue talking in front of the Boutique.

32. After UC Roberts broke contact from BUNTING Agents observed UC Roberts return to his vehicle. UC Roberts then traveled to an undisclosed debriefing location and met with Agents.

33. After reviewing certified court documents, I have been able to confirm that BUNTING has been convicted of the following felony crimes as an adult:

   a. *Assault in the Second Degree* (Case Number 99-1-00924-6), in King County Superior Court, Washington, on or about May 12, 2000.

   b. *Terroristic Threats* (Case Number 96CR1696), Dekalb County Superior Court, Georgia, on or about May 29, 1996.

   c. *Murder 1, Armed Robbery* (Case Number 77-549001), in Cook County Circuit Court, Illinois, on or about May 1, 1979.

   d. *Armed Robbery* (Case Number 72-325701), in Cook County Circuit Court, Illinois, on or about December 29, 1972.

Each of the crimes listed above were punishable by a term of imprisonment exceeding one year.

34. SA Miller, with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, has received specialized training in the recognition and identification of firearms and ammunition and their place of manufacture. SA Miller has reviewed information on the Arcadia Machine Tool, Model Backup, .380 caliber pistol, bearing serial number C08630 and determined it is a firearm according to 18 U.S.C. 921 (a)(3) and that it was not manufactured in the state of Washington. As a result, the firearm must have traveled in/or affected interstate or foreign commerce in order to be possessed in the state of Washington.

## CONCLUSION

35. Based on the aforementioned facts, I believe that KENNETH BUNTING committed the crime of; being a *Felon in Possession of a Firearm*, in violation of Title 18, United States Code, Section 922(g)(1).

---
MICHAEL JACOBI, Complainant
Special Agent, ATF

Based on the Complaint and Affidavit sworn to before me, and subscribed in my presence, the Court hereby finds that there is probable cause to believe the defendant committed the offense set forth in the Complaint.

DATED this 13 day of July, 2015.

---
~~DEAN BRETT~~
United States Magistrate Judge